IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WOODFORD EURASIA ASSETS LTD,      :
MC HOLDINGS GROUP, LLC,            :
ALD HOLDINGS GROUP, LLC, and       :
RD HOLDINGS GROUP, LLC,            :
                                   :
                    Plaintiffs,    :
                                   :
         v.                        :      C.A. No.
                                   :
LOTTERY.COM, INC., MATTHEW         :      **JURY TRIAL DEMANDED**
MCGAHAN, BARNEY BATTLES,           :
CHRISTOPHER GOODING,               :
PAUL JORDAN, and TAMER HASSAN,     :
                                   :
                    Defendants.    :
                                   :

## COMPLAINT

Plaintiffs Woodford Eurasia Assets Ltd. ("Woodford") MC Holdings Group, LLC ("MC Holdings"), ALD Holdings Group, LLC ("ALD Holdings") and RD Holdings Group, LLC ("RD Holdings," together with MC Holdings and ALD Holdings, the "Founder Holding Companies"), through their undersigned counsel, allege as follows.

## INTRODUCTION

1.       This is an action brought by Plaintiffs against Lottery.com, Inc., a U.S. publicly-traded company with shares listed on The Nasdaq Stock Market ("Nasdaq") under the symbol LTRY ("Lottery.com," and the "Company"), and members of the Lottery.com board of directors (the "Director Defendants," and together with the Company, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 *U.S.C.* §§ 78n(a), 78t(a) and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100.

2.      On November 7, 2023, Defendants filed a definitive proxy statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC") in connection with the solicitation of proxies for a special meeting of Lottery.com stockholders (the "Special Meeting") to be held on November 17, 2023.

3.      As described in the Proxy Statement, the principal purpose of the Special Meeting is "[t]o approve the potential issuance of shares of [Company] common stock, par value $0.001 per share (the "common stock") and warrants to purchase shares of [Company] common stock (the "warrants") that will result in a change of control of the Company and in an amount that, in certain circumstances, may be equal to or exceed 20% of [the Company's] common stock outstanding for purposes of complying with Nasdaq Listing Rules 5635(b) and 5635(d) (the "Nasdaq Proposal")."[1]

4.      To maintain its listing on Nasdaq, the Company must at all times comply with Nasdaq's quantitative listing requirements, including Marketplace Rule 5635 which sets forth the circumstances under which shareholder approval is required prior to an issuance of securities in connection with, among other things: (i) a change of control of the Company; and (ii) transactions (other than public offerings) involving the sale or issuance of shares representing 20% or more of the Company's outstanding common stock at a price lower than a defined market price.

5.      In seeking shareholder approval of the Nasdaq Proposal, the Defendants have disseminated to stockholders a Proxy Statement that, in contravention of Section 14(a) of the Exchange Act and SEC Rule 14a-9, contains statements of fact that are false or misleading and omits to state material facts necessary in order to make the statements contained therein not false

---

[1] The only other matter for which stockholder approval is being sought at the Special Meeting is "[t]o approve a proposal to adjourn the Special Meeting to a later date or dates, if necessary, to permit further solicitation and vote of proxies if there are insufficient votes for, or otherwise in connection with, the approval of the Nasdaq Proposal."

or misleading. By doing so, the Director Defendants have breached their fiduciary duty to disclose fully and fairly all material information when seeking shareholder action. Among other things, and as discussed in further detail below, the Proxy Statement:

a.      fails to disclose fundamental conflicts of interest involving members of the Lottery.com board of directors based on their direct and/or indirect interests in a proposed issuance of Lottery.com securities for which stockholder approval is being sought ("Proposed Issuance," and together with other proposed issuances identified in the Proxy Statement, the "Proposed Issuances");

b.      fails to disclose whether any Proposed Issuance that constitutes a conflict of interest or self-interested transaction was subject to the review, approval and oversight of fully informed disinterested directors or an independent body of the Board in accordance with applicable law, governance standards and Nasdaq listing requirements;

c.      fails to disclose accurate and complete information regarding the terms and beneficiaries of each Proposed Issuance, notwithstanding the Company's acknowledgement that such transactions *could result in a change of control of Lottery.com* as well as the issuance of Lottery.com shares at below-market prices; and

d.      omits disclosure of material breaches under existing indebtedness agreements that have or would be caused by the Proposed Issuances and/or related transactions, breaches that could result in material adverse consequences for the Company and its shareholders, including the forced curtailment or abandonment of Lottery.com's business operations.

6.      In addition to the misstatements and omissions described above, the Proxy Statement failed to comply with SEC rules governing the dissemination and content of proxy statements, including, without limitation:

a.      in contravention of Rule 14a-16 under the Exchange Act, the Company failed to deliver a "Notice of Internet Availability of Proxy Materials," or make available the Proxy Statement for review by shareholders, on or before the 40th calendar day prior to the date for the Special Meeting;[2]

b.      no form of proxy (complying with the requirements of Rule 14a-4 of the Exchange Act) was attached as an appendix to the preliminary or the definitive Proxy Statement for the Special Meeting, as required by SEC Rule 14a-6(a) and (b) of the Exchange Act and in accordance with the note to SEC Rule 14a-4(3);

c.      the Chairman and Interim CEO of the Company, together with another director serving on the Company's Board, are known to have direct or indirect interests in a share issuance for which stockholder approval is being sought at the Special Meeting, although no description of their respective interests has been included in the Proxy Statement in contravention of Item 5 of Schedule 14A under the Exchange Act (17 CFR § 240.14a-101).[3]

---

[2] While 10-days' notice of the Special Meeting complies with the <u>minimum</u> notice required under the Company's bylaws, when proxy materials are being provided to stockholders electronically (as the Company has elected to do), the SEC requires shareholders be given no less than 40-days' notice of the internet availability of such proxy materials in order to ensure they have sufficient time to request hard copies of the proxy materials (if desired) and review such materials prior to executing a proxy.

[3] Item 5 of Schedule 14A requires the proxy statement to contain a description of any substantial interest (direct or indirect, by security holdings or otherwise) that any person who currently serves as a director or executive officer has in any matter to be acted upon at the meeting of stockholders.

      d.      while the Proxy Statement required stockholders to register on or before 5:00 p.m. on November 14, 2023 if they wanted to participate in the Special Meeting, no means was provided for them to register, effectively preventing stockholders from participating in the Special Meeting.

      e.      the Company failed to include in the Proxy Statement a current "Security Ownership of Certain Beneficial Owners and Management" table, in the form proscribed by Item 403 of Reg SK, which leaves stockholders without current information about the ability of officers, directors and significant shareholders to influence the vote at the Special Meeting. This information is particularly relevant in light of recent and undisclosed issuances to unknown parties of an aggregate of 342,978 shares of common stock, representing 13.5% of the Company's issued and outstanding common stock.[4]

7.      Effectively, in the guise of a threadbare and facially defective request to approve the Nasdaq Proposal, uninformed stockholders of the Company are being asked to ratify and approve: (i) the takeover of Lottery.com by corporate insiders and other undisclosed parties, (ii) the issuance of Lottery.com shares pursuant to undisclosed terms and at a steep discount to the market price, and (iii) the material breach of obligations the Company owes to its existing lender as well as the risks and liabilities associated with those breaches.  If approval of the Nasdaq Proposal is obtained at the Special Meeting before stockholders have been provided with the disclosure required under the Exchange Act and without providing adequate time to review that disclosure, the result will be irreparable harm to all stockholders, including Woodford.

---

[4] In a Form 10-Q filed on August 22, 2023, the Company reported having 2,546,264 shares of common stock outstanding, while 2,889,242 shares were reported as outstanding in the Proxy Statement filed on November 7, 2023, an increase of 13.5%.

8.      Woodford therefore seeks to enjoin the Special Meeting, and the certification and acceptance of any vote in support of the Nasdaq Proposal or any other steps to further the Nasdaq Proposal, unless and until a proxy statement that fully complies with Section 14(a) of the Exchange Act and SEC Rule 14a-9 has been prepared, filed with the SEC and disseminated to stockholders. In the event the Special Meeting moves forward as currently scheduled and no additional disclosure is provided, Woodford reserves the right to take all necessary action to seek recission of actions taken at the Special Meeting or in connection therewith (including as a result of any vote of the stockholders) and recover any resulting damages and costs.

## THE PARTIES

9.      Woodford is a company incorporated under the laws of England and Wales, with its principal office in London.  Woodford has been a beneficial owner of the Lottery.com stock held directly by the Founder Holding Companies since September 2022.

10.     MC Holdings, LLC is a Delaware limited liability company formed for the purpose of holding the Lottery.com shares owned by Matthew Clemenson, one of the founders of Lottery.com.

11.     ALD Holdings, LLC is a Delaware limited liability company formed for the purpose of holding the Lottery.com shares owned by Anthony DiMatteo, one of the founders of Lottery.com.

12.     RD Holdings, LLC is a Delaware limited liability company formed for the purpose of holding the Lottery.com shares owned by Ryan Dickinson, one of the founders of Lottery.com.

13.     Lottery.com is a company incorporated under the laws of the State of Delaware, with its principal office in Spicewood, Texas.

14.     Matthew McGahan is the Chairman of the board of directors of Lottery.com and its Interim Chief Executive Officer.

15.     Barney Battles is a member of the board of directors of Lottery.com.

16.     Christopher Gooding is a member of the board of directors of Lottery.com.

17.     Paul Jordan is a member of the board of directors of Lottery.com.

18.     Tamer Hassan is a member of the board of directors of Lottery.com.

19.     Collectively, McGahan, Battles, Gooding, Jordan and Hassan are referred to herein as the "Individual Defendants" or the "Board."

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 *U.S.C.* § 78aa, and 28 USC § 1331 as Plaintiffs allege violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible, and pursuant to 8 *Del. C.* § 321 and 10 Del. C. § 3114.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 *U.S.C.* § 78aa, and 28 *USC* § 1391(b)(2) and (3).

## FACTS

### A.     Woodford's Investment In And Restructuring Of Lottery.com

23.     Lottery.com, which was founded in 2016, is a provider of domestic and international lottery products and services. Among other things, Lottery.com offers an online platform for the remote purchase of lottery games in the U.S. and abroad.  In the conduct of its business, the Company seeks to exploit valuable intellectual property rights it holds directly or through its subsidiaries, including rights to the registered trademark LOTTERY.COM and

7

common law trademark rights to SPORTS.COM.  In 2021, Lottery.com completed a business combination with a special purpose acquisition company, or SPAC, and by virtue of that transaction, it became a public company with its common stock traded on The Nasdaq Stock Market ("Nasdaq") under the symbol LTRY.

24.     By 2022, Lottery.com was in deep distress. Faced with a host of financial and regulatory troubles, the Company was forced in June 2022 to furlough the majority of its employees and suspend all of its business operations.  In August 2022, the Company reported in a public filing that: (i) it was unable to timely file its 10-Q for the period ending June 30, 2022, (ii) it "did not have sufficient financial resources to fund its operations or pay certain existing obligations, including its payroll and related obligations," and (iii) "there is substantial doubt about the Company's ability to continue as a going concern."

25.     Woodford is a distressed asset investor and lender, specializing in the cleanup and turnaround of distressed companies such as Lottery.com.  In mid-2022, Woodford began discussions with Lottery.com's then-current leadership regarding potential financing and restructuring of the Company.

26.     In September 2022, Woodford entered into agreements with Lottery.com's founders pursuant to which Woodford acquired voting rights over, and beneficial ownership of, the Lottery.com shares held by the Founder Holding Companies.

27.     In December 2022, Woodford entered into an agreement to provide a $52.5 million credit facility to Lottery.com, consisting of an "Initial Loan" of $2.5 million, to be disbursed in installments, and additional funding under an "Accordion" facility of up to $50 million. Woodford's agreement to provide this credit facility was contingent, among other things, on the removal of Lottery.com's prior board of directors and the appointment of a new board.

28.     In connection with that credit facility, Woodford and Lottery.com entered into two agreements, each dated December 7, 2022: a Loan Agreement (the "Loan Agreement") and a Loan Agreement, Debenture Deed and Securitization (the "Debenture").  As security for repayment of amounts funded under the Loan Agrement, the Debenture provided Woodford with a first floating charge security interest over all present and future assets of Lottery.com.  Amounts borrowed under the Woodford credit facility were also convertible to common stock of Lottery.com, at Woodford's option and at a defined "conversion price," subject to limitations (required by Nasdaq rules) preventing Woodford from acquiring through the conversion more than 19.99% of the issued and outstanding common stock of Lottery.com without Lottery.com first having obtained shareholder approval.

29.     As discussed in more detail below, the Loan Agreement (and its subsequent amendment) and the Debenture each contain a number of covenants by Lottery.com  designed to provide security to Woodford and protect its ability to collect on amounts loaned to Lottery.com, including limitations on Lottery.com's ability to take on new debt or to encumber or sell its assets without Woodford's consent, or to "perpetrate any emission of shares, which may negatively affect the position of [Woodford], without [Woodford]'s consent." The agreements provide Woodford with remedies upon Lottery.com's default, including a right to accelerate the loan and to "crystallize" the floating charge over Lottery.com's assets into a fixed charge.  Under the Debenture, Woodford was granted an irrevocable power of attorney to  be used to execute and deliver any documents and do all things required to perform any obligation imposed on Lottery.com under any binding agreement between Lottery.com and Woodford.

30.     For much of 2023, operating primarily out of offices that Woodford procured at 18 Saville Row in London, Woodford led the process of restructuring Lottery.com, resolving its

regulatory issues, restating audited financials from prior periods, and restarting its business operations.  Woodford also brought in new board members – including Matthew McGahan and Barney Battles, whose role in recent events is discussed below.

31.   By February 2023, Lottery.com's board consisted of McGahan and Battles, and a third member, Nick Kounoupias.  Mark Gustavsen served as Lottery.com's CEO.

32.   By April 2023, with Woodford's assistance, Lottery.com had resumed its online operations.

33.   Woodford also worked to develop new sources of investment and revenue streams for the Company. Among other things, Woodford led the launch of a new project using the Sports.com trademark: an online platform for sports fans operated through the Company's subsidiary, Sports.com.  Following a successful soft launch of the Sports.com project in May 2023, prominent Saudi businessman Majed Al Sorour agreed to join Sports.com as its president, communicating his desire to invest $50 million in the project.

34.   As Woodford was working on the restructuring and re-launch of Lottery.com, it was also extending loans under the Loan Agreement to fund the Company's operations.  By June 2023, Woodford had advanced more than $2 million to Lottery.com.  Those amounts remain outstanding.

**B.**   **Lottery.com's NASDAQ De-listing and the Amended and Restated Loan Agreement**

35.   On February 23, 2023, the Company received a determination letter from Nasdaq's Listing Qualifications department (the "Staff") advising that, due to the Company's failure to comply with Nasdaq's minimum bid price requirement and failure to timely file certain required SEC reports, it no longer complied with Nasdaq's Listing Rules for continued listing. Although the Company appealed the Staff's determination, undertaking 5-6 weeks of intensive efforts led

by Woodford to regain compliance with Nasdaq's listing standards, a Nasdaq Hearings Panel determined to suspend trading in the Company's securities effective May 26, 2023. Thereafter, the Company's common stock no longer traded on a recognized national securities exchange and instead traded in the over the counter market at a price that represented a deep discount to its peak price on Nasdaq.

36.     As a result of the de-listing, Woodford notified Lottery.com on May 31, 2023 that amounts outstanding under the Loan Agreement had been accelerated ("Acceleration Notice").

37.     On June 8, 2023, following Lottery.com's appeal of its de-listing determination, the Nasdaq Hearings Panel reversed its prior determination to de-list the Company, allowing the Company's securities to once against trade on Nasdaq so long as it complied with several conditions.  First and foremost, the Panel required confirmation by June 12, 2023 "that a trading reinstatement would restore the Woodford credit facility, and that Lottery.com would be able to continue to borrow against it to fund its operations."

38.     Accordingly, Woodford and Lottery.com entered into an Amendment and Restatement Agreement dated June 12, 2023 (the "ARA") in respect of the Loan Agreement dated December 7, 2022 (as amended, the "Amended and Restated Loan Agreement") pursuant to which: (i) Woodford revoked its Acceleration Notice, restoring the payment terms under the Loan Agreement as if no Acceleration Notice had been issued, and (ii) Lottery.com acknowledged and agreed that the total amount outstanding under the Loan Agreement (including principal and interest) was $2,159,838.15. [ARA 4].

39. The ARA effected other important changes to the Loan Agreement:

a.     To mitigate the impact of the delisting on the market price for Lottery.com shares, the price used to convert amounts outstanding under the Loan Agreement into

Lottery.com shares was reduced to the lowest per share market price during the 10 business days prior to the date of the ARA (with a 20% discount);

b.      Woodford was provided with an option to purchase up to all of the issued and outstanding shares of Sports.com, a wholly-owned subsidiary of the Company; and

c.      Draw downs on the Accordion feature of the Loan Agreement were conditioned upon, among other things, the Company's continued compliance with Nasdaq listing requirements.

40.      After receiving confirmation that the Woodford credit facility had been restored, Nasdaq reinstated trading in Lottery.com's shares effective as of the market open on June 12, 2023, and subject to the Company's completion of the Panel's remaining requirements by August 24, 2023.

### C.      Lottery.com's Illegitimate Attempt To Replace Woodford

41.      On June 15, 2023, just *three days* after Lottery.com persuaded Nasdaq that Woodford had been restored as the Company's lender (an essential condition to Nasdaq's decision to reinstate trading in Lottery.com stock), director Barney Battles sent a letter to Woodford stating that Lottery.com had secured an alternative funding arrangement that would "replace the finance arrangement between Lottery and Woodford."  The timing of Battle's letter is telling: clearly, Lottery.com chose not to tell Nasdaq prior to reinstatement that it was replacing Woodford with an "alternate funding arrangement," likely concerned that Nasdaq would uncover the egregious conflicts of interest associated with the new lender, as well as the lender's lack of financial resources and experience to fill the role.  By contrast, Woodford had already loaned over $2 million to Lottery.com under existing agreements, and stood ready to lend up to an additional $50 million conditioned on, among other things, Lottery.com's compliance with Nasdaq listing requirements (a condition that Nasdaq likely viewed as important to its reinstatement decision).

12

42.     On June 21, 2023, Lottery.com issued a press release announcing that it had entered into a "funding agreement" with United Capital Investments London, Ltd. ("UCIL"), a UK limited company.

43.     On the day of the Company's announcement, Woodford wrote to Lottery.com (in a letter addressed to the attention of Battles) to express its concerns regarding the Company's actions, explaining that the new funding arrangement placed Lottery.com in breach of Clause 6.5 of the Amended and Restated Loan Agreement pursuant to which Lottery.com undertook not to "attract or obtain any loans, credits or other financing for the amount exceeding USD1,000,000 without a prior written consent of [Woodford]."   Woodford made clear that the breach of that clause constituted an event of default, entitling Woodford to exercise all rights, "including to accelerate the loan, enforce its security, appoint receivers, and exercise its rights of conversion."

44.     In its letter, Woodford also noted that public records appeared to indicate that UCIL was owned primarily if not entirely by Battles and McGahan, with Battles serving as its sole director, and that UCIL's latest financial statements showed it to be balance sheet insolvent. Woodford confirmed that it had "lost confidence in [Battles] and Mr. McGahan as directors of the Company," and demanded their resignation as directors, and seeking, among other things, an urgent meeting of the Company's directors and confirmation that Lottery.com would not enter into any further funding agreements without Woodford's consent.

45.     On July 21, 2023, Woodford again wrote to the Company's Board (in a letter addressed to Battle), reiterating its position regarding the various breaches that would result under the Amended and Restated Loan Agreement if the Company moved forward with its announced funding arrangement with UCIL   In order to protect its interests under the Amended and Restated Loan Agreement and pursuant to Company's "Access" undertaking contained clause 6.13,

13

Woodford's letter requested that Lottery.com supply it with detailed information regarding the proposed funding arrangement with UCIL, including details on any contemplated security. Woodford also requested, as permitted by clause 6.13, a meeting with the directors of the Company at an allotted time, date and location. Lottery.com failed to comply with these requests, providing grounds for the declaration of an Event of Default under clause 9.6 of the Amended and Restated Loan Agreement.

46.     After receiving no substantive response to its letter, Woodford on July 25, 2023 issued a Notice of Crystallization to Lottery.com, giving formal notice of an event of default under the Amended and Restated Loan Agreement and Debenture. The Notice of Crystallization was addressed to Battles with a copy to the other then-current Board members. Subsequent correspondence from Woodford regarding Lottery.com's breaches of the Amended and Restated Loan Agreement and Debenture was also addressed to each member of the Board.

47.     Despite Woodford's letters notices, on August 2, 2023, Lottery.com filed an Form 8-K with the SEC disclosing that "[o]n July 26, 2023, Lottery.com Inc. (the "Company") entered into a credit facility with United Capital Investments London Limited ("UCIL")," and attaching as an exhibit a copy of loan agreement between Lottery.com and UCIL (the "UCIL Loan Agreement") which Battle signed on behalf of UCIL.

48.     Under the UCIL Loan Agreement, Lottery.com granted an option to UCIL ("UCIL Option") giving it rights to buy up to 100% of the shares of Sports.com (the subsidiary that owned the SPORTS.COM trademark). The UCIL Option was identical in all respects to a purchase option that had been granted to Woodford just six weeks before when Lottery.com and Woodford entered into the Amended and Restated Loan Agreement. In addition to the clear problems created by two identical options to purchase the same asset, Lottery.com had clearly breached both the Amended

14

and Restated Loan Agreement and the Debenture by granting UCIL an option to purchase an asset that had already been pledged to secure amounts due Woodford.

49.     Clearly realizing the consequences of its actions, Lottery.com entered into an Amended and Restated Loan Agreement with UCIL on August 8, 2023 (the "Amended UCIL Loan Agreement") to remove all references to the UCIL Option.  Even so, the Amended UCIL Loan Agreement still contained numerous covenants and representations relating to Sports.com and included an as Event of Default if "[a]ny entity other than the [Lottery.com] or [UCIL] gains control over Sport.com." [8.8(d) of the AULA]. Even more concerning for Woodford, however, the Amended UCIL Loan Agreement referenced a "UCIL Securitization Agreement" that was not attached but was defined as the "agreement to be entered into by and between the Parties regarding certain assets of [Lottery.com] at such time as may be requested by [UCIL] in accordance with this Agreement."  Since all of Lottery.com's assets were pledged to Woodford to secure amounts outstanding under the Amended and Restated Loan Agreement, the UCIL Securitization Agreement could not exist without materially breaching both the Amended and Restated Loan Agreement and the Debenture and putting at risk the security Woodford had relied upon when extending millions of dollars in loans to Lottery.com.

50.     On July 20, 2023, the Company filed a Form 8-K reporting that the Company's Chief Executive Officer, Mark Gustavsen, had been terminated by the Lottery.com Board and replaced by Matthew McGahan, the Board's Chairman, who was appointed to serve as interim CEO.  Upon information and belief, Gustavsen had been summarily terminated as CEO when he refused Battles' and McGahan's request to approve the UCIL credit facility after recognizing that, by entering into that agreement, Lottery.com would breach its agreements with Woodford. In connection with his appointment as interim CEO, McGahan resigned from all committees of the

Board on which he served, each of which required his "independence," as defined by applicable SEC and Nasdaq rules.

51.     The same Form 8-K that reported Gustavsen's termination also reported the Board's appointment of Paul Jordan and Tamer Hassan to serve as independent members of the Board.  An August 11, 2023, Lottery.com filed another Form 8-K to report that Nick Kounoupias, an independent, outside director on the Board, had stepped down and been replaced by Christopher Gooding, another independent director.  Under the Amended and Restated Loan Agreement, Woodford had been given the right to nominate the replacement for any independent director that left the Board and any funding request by Lottery.com was expressly conditioned upon, among other things, Woodford being provided with the opportunity to do so.

52.     If there had been any doubts about the nefarious intentions of McGahan and Battles, those doubts were removed on July 19, 2023 when Battles sent an email to personnel affiliated with Woodford instructing them not to come into the offices that Woodford itself had leased and paid for at 18 Saville Row "until we have completed a review of historic activities and established a new path for Lottery.com and Sports.com."  The locks on the office Woodford had leased were immediately changed.

53.     By the end of August 2023, McGahan's and Battle's scheme to take over Lottery.com appeared complete:

a.     the Board was now composed entirely of directors appointed by them, in contravention of Woodford's right under the Amended and Restated Loan Agreement to nominate replacements for any independent directors that left the Board;

b.     the Company's CEO had been fired and replaced by McGahan himself;

    c.      Woodford had been locked out of the offices it had leased for the purpose of overseeing efforts to revive Lottery.com's business operations and help reestablish compliance with its regulatory obligations;

    d.      an entity owned and controlled by McGahan and Battle had replaced Woodford as the source of funding for Lottery.com, inheriting the same right to convert amounts outstanding into Lottery.com shares that Woodford had negotiated for itself, as well as purportedly receiving a pledge of assets that had already been pledged to secure amounts owed to Woodford.

54.    While Woodford remained ready, willing and able to fulfill its funding obligations under the Amended and Restated Loan Agreement, McGahan and Battle caused the Company to breach various undertakings and covenants set forth in the Amended and Restated Loan Agreement *that were express conditions to Woodford's funding obligations*, including covenants and undertaking relating to the assets used to secure the Company's repayment obligations.  At that point, it had become impossible for Woodford to advance additional funding to Lottery.com until it received assurances that: (i) amounts loaned to the Company continued to be fully secured on the terms agreed by the parties in the Amended and Restated Loan Agreement and Debenture, and (ii) all conditions to funding had been satisfied.  When Woodford did not receive those assurances, McGahan and Battle used Woodford's failure to fund as a contrived justification for having Lottery.com enter into an alternate funding arrangement with UCIL, an arrangement they clearly believed would allow them to step into Woodford's shoes and reap the benefit of Woodford's considerable efforts to revive the Company, restore its brands and grow its business.

55.    On September 8, 2023, counsel to Woodford delivered notice to the Company's Board and each of its directors (the "Conversion Notice"), in accordance with the provisions of

clause 10.2 of the Amended and Restated Loan Agreement, requesting and requiring Lottery.com and its current Board to convert $750,000 of amounts due Woodford into 500,000 shares of Lottery.com common stock (the "Conversion Request").  As of the date of this filing, Lottery.com has not honored Woodford's Conversion Request in breach of its obligations under the Amended and Restated Loan Agreement.

56.     Further evidence of the Company's complete disregard for its obligations under its agreements with Woodford can be found in the Form 8-K it filed on October 2, 2023 to report its agreement to acquire Nook Holdings Limited ("Nook"), a private limited company incorporated and registered in the Abu Dhabi Global Market, Abu Dhabi, United Arab Emirates. The $2.314 million purchase price for the Nook acquisition exceeded the amount Lottery.com was authorized to spend without Woodford's consent.  Furthermore, the Company disclosed in its Form 8-K that at any time, after taking control of Nook and in its sole discretion, it would have the right to assign the acquisition agreement, including any of its rights or obligations, in whole or in part, to any affiliated entities or third parties it deems necessary in the performance of the Agreement or in the operations of Nook. That right of assignment – in addition to raising serious concerns about the propriety and arm's length nature of the agreement – would conflict with the Company's pledge of all of its assets to Woodford under the Amended and Restated Loan Agreement and Debenture.

57.     On October 22, 2023, the Company filed a Form 8-K with the SEC to report the Board's approval of a resolution to amend and restate the Company's Bylaws for the purpose of, among other things, reducing (from a majority of outstanding to one-third) the number of shares that had to be present at a meeting of the Company's stockholders to establish a quorum.  As a result of this change, fewer shareholders would be required in order to convene an annual or special

meeting of stockholders, making it easier to approve matters submitted for the approval of stockholders, including the Nasdaq Proposal.  The Proxy Statement states:

> A quorum of stockholders is necessary to hold a valid meeting. A quorum will be present if stockholders holding one-third of the voting power of the outstanding shares entitled to vote are present in person, by remote communication, or represented by proxy at the meeting. On the Record Date, there were 2,889,242 shares outstanding and entitled to vote. Thus, the holders of 963,081 shares must be present by remote communication at the meeting or represented by proxy at the meeting to have a quorum.

Woodford presently has voting power over 505,913 shares held directly by the Founder Holding Companies.  If Woodford's Conversion Request had been honored, it would have owned another 500,000 shares, giving it beneficial ownership of, and voting power over, an aggregate of 1,005,913 shares, enough for Woodford alone to meet the recently reduced quorum requirement. By failing to honor Woodford's Conversion Request,  Lottery has significantly impaired the ability of Woodford to have a voice in the outcome of matters submitted for the approval of stockholders at an annual or special meeting, including the Nasdaq Proposal.

### D.    **The Proxy Statement**

58.    The Proxy Statement, filed with the SEC on November 7, 2023, represents the next step in the plan by McGahan and Battles to seize control of the Company and its assets.

59.    The Proxy Statement solicited proxies for a Special Meeting to be held on November 17, 2023 to vote on a proposal that would effectively permit McGahan, Battle and undisclosed third parties to acquire control of the Company through the acquisition of shares at a price that represents a steep discount to the market price for Lottery.com shares.  Based on the timing of that filing, stockholders were provided with only ten days to consider this proposal – the minimum notice period required by the Company's bylaws and an unreasonably short time to consider a proposal of such significance.

19

60.    The primary purpose of the Special Meeting is to obtain stockholder approval of "[t]he potential issuance of shares of our common stock and warrants that will result in a change of control of the Company and in an amount that, in certain circumstances, may be equal to or exceed 20% of our common stock outstanding on for purposes of complying with Nasdaq Listing Rules 5635(b) and 5635(d)."

61.    The Proxy Statement states that on July 26, 2023, Lottery.com "entered into a credit facility … with United Capital Investments London Limited." The Proxy Statement refers to, and incorporates as an exhibit, the July 26, 2023 loan agreement between Lottery.com and UCIL, and its subsequent amendments. The Proxy Statement explains that the UCIL credit facility "consists of (a) funding in the principal amount of up to $1,000,000 … (b) an additional credit facility, at the Company's written request and at UCIL's sole discretion for an amount up to a total of $49,000,000 in additional financing (the "Accordion")," and that "[t]he aggregate principal amount of the Credit Facility is $50,000,000."

62.    The Proxy Statement further explains that "[t]he Credit Facility provides that UCIL may elect, in its sole discretion, to convert an amount of the Initial Loan and the Accordion, together with accrued and unpaid interest, in whole or in part, into shares of the Company's common stock at a fixed conversion price…"

63.    That "conversion" is accomplished by the issuance of new stock.

64.    As the Proxy Statement explains, Nasdaq rules require stockholder approval prior to the issuance of common stock in a transaction (other than a public offering) if it will result in a counterparty holding more than a certain percentage of the Company's outstanding common stock. Among other things, Nasdaq listing rule 5635(d) requires shareholder approval for such an issuance equal to 20% or more of the Company's outstanding common stock for a purchase price

lower than the market price as of the signing of a binding agreement.  As the Proxy Statement further explains, the conversion price under the UCIL loan agreement is at a steep discount to the market price of Lottery.com shares at the relevant date.   Under Nasdaq rules, therefore, Lottery.com may not issue new shares to UCIL in connection with the conversion right under the UCIL credit facility beyond that threshold without stockholder approval.  The UCIL loan agreement, as amended and as attached to the Proxy Statement, reflects those rules, acknowledging that UCIL's ability to exercise its conversion right is subject to the requirement to obtain stockholder approval as required by Nasdaq rules.

65.    The Proxy Statement therefore seeks approval to issue new shares in excess of that threshold, in satisfaction of UCIL's conversion rights under the UCIL loan agreement.

66.    In addition, the Proxy Statement states that "[o]n August 29, 2023, the Company received a proposal containing general terms for an additional credit facility … by assignment to OneStream Invest Ltd."[5]  The Proxy Statement does not attach the terms of that credit facility or disclose them in detail, but it does disclose that the lender would have a conversion right similar to the one provided in the UCIL credit facility.

67.    In addition to the OneStream Invest Ltd credit facility, the Proxy Statement also indicates that Lottery.com "further proposes to seek additional credit facilities" with unspecified "Additional Lenders," again allowing for conversion rights, up to a "maximum dollar amount of the issuance [of] $100,000,000."   The Proxy Statement does not disclose the identity of the "Additional Lenders" other than to state that "[i]n the event the Additional Credit Facilities relate to a potential change of control under Nasdaq Listing Rule 5635(b), the Company hereby identifies

---

[5] No explanation was provided, nor can one be reasonably inferred, as to the meaning of a credit facility "by assignment."

UCIL and OneStream Invest Ltd. as the potentially new controlling stockholders." That clarification is meaningless, however, given that no information is provided about individuals and entities that own and control UCIL and One Stream.

68.     At its core, the Proxy Statement is seeking the approval of stockholders to issue new stock to UCIL, OneStream Invest Ltd and potentially other lenders at a conversion price that represents a steep discount to the market price for Lottery.com shares and in amounts that could result in a change of control of the Company.  It is inconceivable that stockholders are being asked to approve these transactions without complete and accurate information about the terms of the transactions, the inherent conflicts involved and the persons who would stand to benefit and assume control of the Company.  Moreover, the Company has completely disregarded SEC rules regarding the period of time stockholders must be provided to access and review proxy materials, including the Proxy Statement, and failed to comply with SEC requirements regarding the content of any materials used to solicit the votes of stockholders.  Moreover, while the Company claims in the Proxy Statement to be holding the Special Meeting "online and providing internet voting to facilitate stockholder attendance and participation," its actions belie those words, from giving a practically unfeasible and virtually unprecedented 10-day's advance notice of the Special Meeting to providing no link, email address or other method by which stockholders are able to register to participate in the meeting before the stated deadline.

69.     Additionally, the Proxy Statement seeks open-ended approval to issue shares in any amount and for any price that its lenders may request, noting that "[w]e generally have no or limited control over whether the Lender(s) convert the loan proceeds from the Loan(s) or Accordion(s) or whether the Warrant(s) holder exercises its Warrant(s). For these reasons, we are

unable to accurately forecast or predict with certainty the total amount of shares of Company common stock that may be issued to the Lender(s) under the Credit Facilities or the Warrant(s)."

70.     The Proxy Statement acknowledges that "such issuances will have a dilutive effect on the Company's existing stockholders, including, over time, the voting power of the existing stockholders" and that they may result in a change of control.

71.     The Proxy Statement does *not* disclose critical facts that would be necessary to make its disclosures not misleading, or to permit stockholders to make an informed vote.

72.     **First**, the Proxy Statement does not disclose McGahan's or Battles' interests in UCIL.  Although previous SEC filings by Lottery.com briefly acknowledge that McGahan and Battles have a "direct or indirect interest in UCIL," the Proxy Statement is completely silent on the existence, nature and extent of their ownership interests *notwithstanding that such information is unquestionably material to stockholders who are being asked to authorize a below market sale of shares to UCIL in amounts that could result in a change of control of Lottery.com.*  Detailed disclosure is clearly required in light of the potential for self-dealing.  In effect, through this Proxy Statement, McGahan and Battles, as board members (and having appointed the remaining board members themselves) are asking stockholders to approve an arrangement under which they have an option to issue stock to themselves, or an entity in which they have some unspecified direct or indirect interest, at a steeply discounted price, in amounts limited only by the size of the UCIL credit facility.  Stockholders have no way of knowing from the Proxy Statement the nature and extent of the conflict that permeates the proposed issuance of shares to UCIL.

73.     **Second**, the Proxy Statement does not disclose any information at all regarding the identity of the persons or entities that own and control "OneStream Invest Limited," a proposed lender that the Proxy Statement confirms could control Lottery.com as a consequence of the share

issuances stockholders are being asked to approve.  Without that information, stockholders are unable to determine whether there are conflicts of interest involved in the proposed lending arrangement, or if OneStream has the experience, financial resources and integrity to serve as a lender and control person of Lottery.com.

74.     **Third**, the Proxy Statement fails to disclose terms of the various credit facilities and transactions that would be material to a stockholder when deciding how to vote its shares. There is no disclosure at all regarding the terms of the proposed credit facility with OneStream Invest Limited – who the Proxy Statement confirms could assume control of the Company by virtue of the Proposed Issuance -- nor had the identity of the lenders or any other terms any of the proposed additional facilities been disclosed.

75.     The Proxy Statement also does not disclose what security, if any, is being or will be offered to UCIL, OneStream Invest Limited, or the additional lenders, in return for the hundreds of millions of dollars of new financing contemplated by the Proxy Statement.  It is therefore unclear to what extent stockholders are being asked, implicitly, to approve the encumbrance of the Company's assets (which have already been pledged to Woodford) with new security interests.

76.     **Fourth**, the Proxy Statement does not disclose the purposes for which the UCIL, OneStream Invest Limited and unspecified "additional" credit facilities are sought.  Among other things, it appears from the Form 8-K filed by Lottery.com on October 2, 2021 that the Company intends to use amounts borrowed under the credit facilities to finance an acquisition of a United Arab Emirates-based company known as Nook Holdings Limited. The Proxy Statement does not disclose this.  Furthermore, the terms of the transaction described in Lottery.com's Form 8-K are evidence of additional breaches of the Amended and Restated Loan Agreement and Debenture.

77.     **Fifth**, the Proxy Statement does not disclose that the transactions for which it seeks approval will constitute continued, ongoing, and material breaches of Lottery.com's Amended and Restated Loan Agreement and Debenture with Woodford.

78.     The Proxy Statement seeks approval for Lottery.com to borrow tens of millions of dollars under existing and proposed new credit facilities with UCIL, OneStream Invest Limited, and unspecified "additional lenders," and to issue new stock up to the amount of those credit facilities.  Those transactions place Lottery.com in breach of multiple provisions of the Amended and Restated Loan Agreement and Debenture, and will, if Lottery.com goes ahead with its proposed course of action, constitute multiple additional new breaches of those agreements.

79.     Among other things, Lottery.com's proposed course of action is or will be in breach of provisions of the Amended and Restated Loan Agreement and Debenture that:

- prohibit Lottery.com from taking on new loans in excess of $1 million without Woodford's consent (Amended and Restated Loan Agreement 6.5)

- prohibit Lottery.com from "perpetrat[ing] any emission of shares, which may negatively affect the position of [Woodford], without [Woodford]'s consent." (Amended and Restated Loan Agreement 6.14(d))

- prohibit Lottery.com from creating any encumbrance or security interest over the Company's assets without Woodford's consent (Amended and Restated Loan Agreement 6.8, Debenture 7.1)

80.     The Board is well aware that its actions are in breach of the Company's agreements with Woodford, because, as discussed above, Woodford has repeatedly notified them of the breach. Despite this, the Proxy Statement does not disclose the fact that the proposed transactions are and

will be in breach of the Company's contractual obligations, or disclose the existence of Woodford's notices, or otherwise hint at an ongoing dispute.

81.    The consequences of those breaches will be material for the Company and its stockholders, as Woodford will be forced to protect its interests.  Indeed, Lottery.com has repeatedly recognized in other filings that its "obligations under the [Woodford credit facility] are secured by a first priority security interest in substantially all of our assets and if we were to default, they could force us to curtail or abandon our business plans and operations."

82.    Tellingly, also, the UCIL loan agreement attached to the Proxy Statement contains a provision specifically providing for Lottery.com to indemnify UCIL and its officers, employees and representatives (presumably including Battles and McGahan) against "liability incurred by the Indemnified Person in connection with or arising out of any dispute or claim brought against the Indemnified Party by Woodford EurAsia Assets Limited." The Proxy Statement's "Nasdaq Proposal" does not disclose this indemnity, or make it clear to stockholders that they are not only being asked to approve a course of action that will breach Lottery.com's contractual obligations, but that UCIL, Battles and McGahan would be indemnified (at the expense of the Company and its shareholders) for any liability arising from a breach that Battles and McGahan themselves had orchestrated and effected.

83.    **Finally**, the Proxy Statement does not disclose that Lottery.com *already* has access to an existing credit facility with Woodford – indeed it does not mention Woodford at all.  Nor does the Proxy Statement even attempt to explain why, given that the Woodford credit facility remains available, it is necessary or desirable for the Company to take on multiple additional credit facilities, under circumstances involving conflicts of interest and inevitable breaches of its

contractual obligations to Woodford, nor does it detail the potentially severe consequences of those breaches.

84.    The above omissions render the Proxy Statement materially incomplete and misleading, in contravention of the Exchange Act.  Without full disclosure of the omitted information, it will be impossible for beneficial owners of Lottery.com stock, including Plaintiffs, to make an informed decision regarding whether to vote in favor of the Nasdaq Proposal.  If the vote goes ahead without full disclosure, Plaintiffs will therefore be threatened with irreparable harm.

## CLAIMS FOR RELIEF

### COUNT ONE:

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

85.    Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

86.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

87.    The Proxy Statement seeks approval for the Nasdaq Proposal.  For all the reasons given above, the Proxy Statement's disclosures regarding the Nasdaq Proposal are materially misleading, and omit to disclose material facts necessary in order to make the disclosures not misleading.

88.     The Proxy Statement is issued "By Order of the Board of Directors," and signed by McGahan in his capacity as Chairman of the Board.  The Proxy Statement contains the unanimous recommendation of the Board to adopt the Nasdaq Proposal.  McGahan and each of the other Individual Defendants, by virtue of their role as members of the Board, thus authorized the dissemination of the Proxy Statement.  Each of the Individual Defendants were aware of the omitted information detailed herein by virtue of their role as members of the Board and by virtue of the fact that each of them was copied on and aware of Woodford's notices and other correspondence regarding the numerous breaches by Lottery.com of the Amended and Restated Loan Agreement and Debenture, as discussed above.

89.     At a minimum, Defendants were grossly negligent in preparing and reviewing the Proxy Statement, as they knew or had reason to know that material facts existed that were omitted from the Proxy Statement.

90.     The omissions in the Proxy Statement are material to stockholders, including Plaintiffs, who will be deprived of the right to cast an informed vote if full disclosure is not provided prior to any vote on the Nasdaq Proposal.  Moreover, Plaintiffs will be injured to the extent it may be bound by the votes of other stockholders made without full disclosure.

91.     If the Special Meeting or any vote on the Nasdaq Proposal goes ahead without full disclosure, Plaintiffs will therefore be irreparably harmed.

92.     Plaintiffs have no adequate remedy at law.

## COUNT TWO

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

93.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of Lottery.com within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and officers of Lottery.com, and participation in and awareness of Lottery.com's operations, each of the Individual Defendants influenced and controlled, directly or indirectly, Lottery.com's decision making, including the content and dissemination of the Proxy Statement.

95.     Each of the Individual Defendants were aware of the material information omitted from the Proxy Statement and its failure to comply with applicable SEC rules.

96.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

97.     If the November 17, 2023 meeting or any vote on the Nasdaq Proposal goes ahead without full disclosure and without providing stockholders adequate opportunity to review the Proxy Statement before submitting a proxy, Plaintiffs will be irreparably harmed, as a direct result of the Individual Defendants' conduct in disseminating and approving the Proxy Statement.

98.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiffs demand relief against the Defendants jointly and severally, as follows:

• Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with the Special Meeting, or any other attempt to seek stockholder approval for the Nasdaq Proposal or any similar proposal, or from certifying or accepting any vote in support of the Nasdaq Proposal or taking any actions to effectuate the issuances or other transactions described in the Nasdaq Proposal on the basis of any such vote, or taking any other steps to further the Nasdaq Proposal absent full disclosure of all material

information omitted from the Proxy Statement and compliance with all related SEC rules and requirements;

- Rescinding, to the extent effected, any action or transaction that results from or is in furtherance of the proposals for which stockholder approval is sought pursuant to the Proxy Statement;

- An award of damages, including rescissory damages as appropriate, for all damages suffered as a result of Defendants' violations of the Exchange Act;

- An award of Plaintiffs' costs and disbursements in connection with this action, including reasonable attorneys' and expert fees and expenses; and

- Such other and further equitable relief as this Court may deem just and proper.

### **<u>JURY DEMAND</u>**

The Plaintiffs demand a trial by jury.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Kelly E. Rowe*
Samuel T. Hirzel (# 4415)
Kelly E. Rowe (# 6199)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7315
shirzel@hegh.law
krowe@hegh.law
*Attorneys for Plaintiffs Woodford Eurasia Asset Ltd, MC Holdings, LLC, ALD Holdings LLC, and RD Holdings, LLC*

OF COUNSEL:

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
John D. Nielsen
Jonathan J. Walsh
Felix Gilman
101 Park Avenue
New York, New York 10178-0061

Dated:  November 16, 2023