IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOODFORD EURASIA ASSETS LTD, MC HOLDINGS GROUP, LLC, ALD HOLDINGS GROUP, LLC, and RD HOLDINGS GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LOTTERY.COM, INC., MATTHEW MCGAHAN, BARNEY BATTLES, CHRISTOPHER GOODING, PAUL JORDAN, and TAMER HASSAN.<br><br>Defendants. | C.A. No. 23-1317 |

## MEMORANDUM ORDER

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs Woodford Eurasia Assets, Ltd. ("Woodford"), MC Holdings Group, LLC, ALD Holdings Group, LLC, and RD Holdings Group, LLC (collectively, "Plaintiffs") move for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"), and Expedited Discovery (D.I. 4) against Defendants Lottery.com, Inc. ("Lottery.com"), Matthew McGahan ("McGahan"), Barney Battles ("Battles"), Christopher Gooding ("Gooding"), Paul Jordan ("Jordan"), and Tamer Hassan ("Hassan") (collectively, "Defendants"). For the reasons set forth below, Plaintiffs' Motion for TRO and Preliminary Injunction is DENIED and Plaintiffs' Motion for Expedited Discovery is DENIED.

1

## I.     BACKGROUND[1]

Lottery.com is a provider of domestic and international lottery products and services, founded in 2016. D.I. 5 at 3. It has been a publicly traded company since 2021, with its common stock traded on Nasdaq under the symbol LTRY. *Id.* (citing Decl. ¶¶ 5-6). Woodford has been a beneficial owner of Lottery.com stock since September 2022. *Id.* Allegedly, in December 2022, Woodford agreed to provide a credit facility of up to $52.5 million to Lottery.com, contingent on the removal of Lottery.com's prior board of directors and the appointment of a new board. *Id.* (citing Decl. ¶¶ 3, 10-11). Woodford and Lottery.com entered into a "Loan Agreement" and a "Debenture." *Id.;* D.I. 6, Ex. B; Ex. C. These agreements contained covenants relating to ability to take on debt, sell assets, or issue shares. *Id.* at 4.

On May 26, 2023, the Company was delisted from Nasdaq. *Id.* at 4. Woodford and Lottery.com entered into an Amended and Restated Loan Agreement dated June 12, 2023 (the "ARA") in response to the Nasdaq Hearings Panel reversing the delisting decision, which required confirmation "that a trading reinstatement would restore the Woodford credit facility" and "Lottery.com would be able to continue to borrow against [Woodford] to fund its operations". *Id.* at 5.

After Nasdaq restored Lottery.com's trading privileges, director Battles sent a letter to Woodford stating that Lottery.com had secured an alternative funding arrangement that would "replace the finance arrangement between Lottery and Woodford" and that Woodford need no longer work out of the 18 Saville Row offices, where personnel had previously worked from. D.I. 5 at 4-5. On June 21, 2023, Lottery.com issued a press release announcing that it had entered into a "funding agreement" with United Capital Investments London, Ltd. ("UCIL"). According to

---

[1] Facts as provided by Plaintiffs in the Complaint, D.I. 1, and briefing, D.I. 5.

2

Plaintiffs, UCIL is owned primarily by Battles and McGahan, with Battles serving as its sole director, and that UCIL's latest financial statements showed it to be balance sheet insolvent. *Id.* at 6.

On July 25, 2023, Woodford issued a Notice of Crystallization to Lottery.com, "giving formal notice of an event of default under the ARA and Debenture." *Id.* at 6. On August 2, 2023, Lottery.com filed a Form 8-K disclosing that it had entered into a credit facility with UCIL. *Id.* The form included a copy of the loan agreement, wherein director Battle signed on behalf of UCIL. *Id.*

On November 7, 2023, Defendants filed a definitive proxy statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC") in connection with the solicitation of proxies for a special meeting of Lottery.com stockholders (the "Special Meeting") to be held on November 17, 2023. The Proxy Statement states that the purpose of the Special Meeting is to:

> 1. To approve the potential issuance of shares of our common stock, par value $0.001 per share (the "common stock") and warrants to purchase shares of our common stock (the "warrants") that will result in a change of control of the Company and in an amount that, in certain circumstances, may be equal to or exceed 20% of our common stock outstanding for purposes of complying with Nasdaq Listing Rules 5635(b) and 5635(d) (the "Nasdaq Proposal"); and
>
> 2. To approve a proposal to adjourn the Special Meeting to a later date or dates, if necessary, to permit further solicitation and vote of proxies if there are insufficient votes for, or otherwise in connection with, the approval of the Nasdaq Proposal (the "Adjournment Proposal").

D.I. 6, Ex. A at 2.

Plaintiffs filed the present motions, alleging that Defendants must be enjoined from holding the Special Meeting and promptly participate in expedited discovery. D.I. 4; D.I. 5.

## II. DISCUSSION

For the reasons set forth below, the Court finds that Plaintiffs failed to meet their burdens and thus deny Plaintiffs' motions.

### A. Injunction Standard

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. A preliminary injunction is an "extraordinary remedy" to be granted "only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)). The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held" in order to "allow a victory by [the plaintiffs] to be meaningful." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court." *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1437 (3d Cir. 1994) (quoting *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 633 (3d Cir. 1992)).

"Like a preliminary injunction, a temporary restraining order is 'an extraordinary and drastic remedy ... that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Bullock v. Carney*, 463 F. Supp. 3d 519, 523 (D. Del.), *aff'd*, 806 F. App'x 157 (3d Cir. 2020), and *aff'd*, C.A. No. 20-2096, 2020 WL 7038527 (3d Cir. June 4, 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

When seeking a preliminary injunction, the movant must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch.*

4

*Dist.*, 386 F.3d 514, 524 (3d Cir. 2004); *see Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The "failure to establish any element ... renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

In order to meet the irreparable harm requirement, Plaintiff "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight*, 882 F.2d at 801. "[T]he injury must be of a peculiar nature, so that compensation in money cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987).

### B. Injunction Analysis

**Success on the Merits:** Plaintiffs assert that Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 (Count I) and Section 20(a) of the Exchange Act (Count II). D.I. 1, ¶¶ 85-98.

"The basic legal standard used to determine Plaintiffs' likelihood of success on the merits is familiar": the defendant directors have the duty to disclose in a non-misleading manner all material facts bearing on the decision of the Lottery.com stockholders' to approve the NASDAQ Proposal. *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1259–60 (Del. Ch. 2003). The test for materiality is as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Arnold v. Society for Sav. Bancorp.*, 650 A.2d 1270, 1277 (Del.1994) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

Plaintiffs assert multipe "materially false and misleading statements and material omissions" that would be substantially likely to alter a voter's decision if it had been made. First, Plaintiffs assert that neither McGahan's nor Battles' interest in UCIL is raised in the Proxy Statement.

Plaintiffs argue that the Proxy Statement itself is completely silent on the existence, nature and extent of their ownership interests notwithstanding that such information is unquestionably material to stockholders who are being asked to authorize a below market sale of shares to UCIL in amounts that could result in a change of control of Lottery.com. D.I. 5 at 11. However, Plaintiffs recognize that McGahan's and Battles' interest in UCIL has been shared in related filings referenced and included in the Proxy Statement itself. *Id.* at 6; D.I. 6, Ex. A. For example, in Lottery.com's August disclosure, Lottery.com acknowledged that McGahan and Battles have a "direct or indirect interest in UCIL[.]" *Id.* (citing Decl., ¶¶ 29-31). The Loan Agreement between Lottery.com and UCIL, wherein Battles signs for UCIL, is also attached to the Proxy Statement. D.I. 6, Ex. A. Thus, the Court is not convinced at this stage that additional reference to the directors' interest in UCIL substantially change a voter's mind and is not convinced that Plaintiffs have a likelihood of success in showing as much.

Turning to Plaintiffs' second and third arguments, the Court is not convinced at this stage Plaintiffs can successfully show that the Proxy Statement's failure to include information regarding Woodford or Woodford's notifications to Lottery.com that it could be in breach of the ARA and Debenture are material omissions such that Lottery.com and Defendants are in violation of the Exchange Act. *Id.* at 14-15. Plaintiffs assert that these omissions "makes it impossible for 'stockholders to understand the real nature of the questions for which authority to cast [their] vote

6

is sought.'" *Id.* (quoting *TSC Indus., Inc.*, 426 U.S. at 444). But, alternatively, in the event that the ARA and Debenture are not valid nor enforceable, their omissions in the Proxy Statement would be immaterial.

Plaintiffs also assert that the Proxy Statement is procedurally defective, in large part because it does not require the Proxy Statement be made available for review forty days prior to the vote. D.I. 5 at 16. However, Plaintiffs note that the Company's bylaws only require ten days, *see id.* (citing Decl., ¶ 42), and fail to cite to case law that an injunction in warranted.

Though the Court is not convinced that Plaintiffs' have shown a likelihood on the success of the merits, the Court will turn to the second factor necessary to find an injunction.

**Irreparable Harm:** The Court finds that Plaintiffs have not met their burden on irreparable harm, and thus an injunction cannot be granted. Should the vote go forward and the stockholders approve the proposal, and should Plaintiff subsequently prove the Proxy Statement contained materially misleading information or omitted material facts, "the Court can exercise its equitable power to void the results of the [Special] Meeting (should such action be warranted based on a full record)." *Immunomedics, Inc. v. Venbio Select Advisor LLC*, No. CV 17-176-LPS, 2017 WL 822800, at *3 (D. Del. Mar. 2, 2017). *See Bertoglio v. Texas Intern. Co.*, 472 F. Supp. 1017, 1021 (D. Del. 1979) ("[I]t is well within the equitable power of the Court to void the results of a shareholders' vote and require both a new solicitation of proxies and a second shareholder vote."). "Granting an injunction here, simply because the Court can prevent the vote from taking place, would risk transforming the extraordinary relief of a preliminary injunction and temporary restraining order into something easily and regularly obtained." *Immunomedics*, 2017 WL 822800, at *3. *See Oliver Press Partners, LLC v. Decker*, No. 1817-N, 2005 WL 3441364, at *2 (Del. Ch.

7

Dec. 6, 2005); *Silberstein v. Aetna, Inc.*, 2014 WL 1388790, at *5 (S.D.N.Y. Apr. 9, 2014); *see also Stein v. 1–800–Flowers.com, Inc.*, 2016 WL 8230128, at *3 (E.D.N.Y. Dec. 2, 2016).

**Balance of Hardships:** Plaintiffs were aware of the Proxy Statement, at the latest, on November 7, 2023. Plaintiffs were also aware that the Company's bylaws provides that a Special Meeting may be held as early as ten days from the Proxy Statement's issuance. D.I. 5 at 16. But Plaintiffs only filed the present Motion for a TRO on November 17, 2023, the day of the Special Meeting—likely to frustrate any chances for Defendant to respond. Such a delay weighs against Plaintiffs.[2]

**Public Interest:** The Court recognizes that "[p]reventing deception or confusion in the marketplace is a public interest." *SK & F, Co. v. Premo Pharm. Laby's.*, 625 F.2d 1055, 1057 (3d Cir. 1980). But Plaintiffs failed to convince this Court that (1) they will likely have success on the merits, and/or (2) that Plaintiffs will suffer irreparable harm. Therefore, the public's interest is best served by permitting the Special Meeting to continue in line with the Company's bylaws.

### C. Expedited Discovery

Neither the Federal Rules of Civil Procedure nor the Third Circuit Court of Appeals has established a standard governing motions to expedite discovery. *Schaper v. Lensar, Inc.*, No. CV 23-692-GBW, 2023 WL 4532462, at *3 (D. Del. July 13, 2023) (citing *Park Lawn Corp. v. PlotBox, Inc.*, C.A. No. 20-1484-RGA, 2021 WL 3490020, at *1 (D. Del. Aug. 9, 2021)); *see also Reybold Grp., Inc. v. Does 1–20*, 323 F.R.D. 205, 208 (D. Del. 2017)). "Courts, however, have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing

---

[2] In reviewing the exhibits, the Court notes that the Proxy Statement states that the meeting will be held on November 17, 2023, at 9:00 a.m. Central Time, the same day that this case was opened. D.I. 6, Ex. A.

and sequence of discovery." *Vision Films, Inc. v. John Does 1-24*, 2013 WL 1163988, at *2 (D. Del. Mar. 20, 2013).

Courts in the Third Circuit may employ one of two tests for determining the propriety of an expedited discovery request. *Id.* The first standard adopts the framework outlined in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982). The analysis is "very similar to a preliminary injunction analysis and looks more closely at the merits of the request." *Murguly v. Locke*, 2020 WL 2401354, at *1 (D.N.J. May 11, 2020). Under the *Notaro* standard, the moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Vision Films*, 2013 WL 1163988, at *2 (quoting *Notaro*, 95 F.R.D. at 405).

The second standard, called the "reasonableness" test, requires a showing of good cause and is "considerably more liberal than the *Notaro* standard." *Park Lawn*, 2021 WL 3490020, at *2 (quoting *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006)). Under the "reasonableness" test, "the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011).

Here, Plaintiffs seek expedited discovery to obtain "board minutes and other documents relating to the preparation of the Proxy Statement, to undisclosed conflicts of interest, and relating to Defendants' knowledge of the transactions at issue in the Proxy Statement." D.I. 5 at 21.

Even under the Court's more liberal "reasonableness" test, the Court does not find that the factors weigh in favor of granting expedited discovery. The first factor, the timing and context of the discovery requests, weighs in favor of Defendants. The voting deadline and Special Meeting have already passed, and there is no preliminary injunction hearing scheduled. The second factor, the scope and purpose of the requests, also weighs against granting expedited briefing—the requests largely seek discovery addressing every claim raised in the Complaint and goes beyond seeking narrow discovery pertaining to granting an injunction. Finally, the third factor weighs against expedited briefing. The burden to the respondent to provide the discovery sought expeditiously is unnecessary and overly burdensome at this time. Thus, any discovery sought can be gathered through the ordinary course of discovery in this Court.

* * *

**WHEREFORE**, at Wilmington this 17th day of November, 2023, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (D.I. 4) is **DENIED.**

2. Plaintiffs' Motion for Expedited Discovery, pursuant to Federal Rule of Civil Procedure 26(d)(1), (D.I. 4) is **DENIED.**

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE